William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
Phone: (212) 286-1425; Fax: (646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LIBRADO VASCONCELOS,           :     ECF
                                   :     17 Civ. _____
             Plaintiff,    :
                                   :     **COMPLAINT AND**
      -against-        :     **JURY DEMAND**
                                   :
VELO CORPORATION OF AMERICA   :
d/b/a "Quik Trak Messenger Service", JAN  :
GRZNAR, MARK MACBAIN, JOSEF HALADA :
and JOHN DOES # 1-10,            :
                                   :
             Defendants.   :
------------------------------------------------------------X

      Plaintiff LIBRADO VASCONCELOS ("Plaintiff"), complains and alleges for his complaint against VELO CORPORATION OF AMERICA  d/b/a "Quik Trak Messenger Service", JAN GRZNAR, MARK MACBAIN, JOSEF HALADA and JOHN DOES # 1-10 (together "Defendants" or "Defendant") as follows:

### NATURE OF THE ACTION

      1.     Plaintiff alleges that he is: (a) entitled to unpaid wages from Defendants for work for which he did not receive minimum wage and/or overtime premium pay, as required by law, and (b) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*.

      2.     Plaintiff further complains that he is entitled to back wages from Defendants for minimum wages, overtime wages, and/or spread of hours premium pay, as required by the New York Labor Law §§ 650 *et seq*. and the supporting New York State Department of Labor regulations.

3.      Plaintiff further complains that he is entitled to $50 per day as a result of Defendants' failure to provide the notice required under the New York Wage Theft Prevention Act and $250 per week for Defendants' failure to provide a Wage and Hour Statement to Plaintiff disclosing, inter alia, correct overtime hours worked and rates of pay.

4.      Plaintiff complains that he was not paid for all his commissions that he earned and was not paid minimum wages when he was paid commissions less than minimum wage and also complains that he was not reimbursed for his Metrocard costs or telephone costs and was not paid for all his hours worked including his time on call during the day and waiting on call after his last delivery.

5.      Finally, Plaintiff complains that Defendant retaliated against him by terminating him in retaliation for his complaining about his wages.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

9.      Plaintiff LIBRADO VACONCELOS is an adult individual, residing in New York County, New York.

10.      Upon information and belief, Defendant VELO CORPORATION OF AMERICA

("Corporate Defendant") is a New York corporation, with its principal place of business located at 267 West 17th Street, 3rd floor, New York, NY 10011-5389. The Corporate Defendant does business as "Quick Trak Messenger Service."

11.    Upon information and belief, Defendants JAN GRZNAR, MARK MACBAIN, JOZEF HALADA and JOHN DOES # 1-10 ("Individual Defendants") are each an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

12.    Upon information and belief, JAN GRZNAR is the Chief Executive Officer of the Corporate Defendant, and has held this position during the last six years ("six year time period").

13.    Upon information and belief, MARK MACBAIN is the President of the Corporate Defendant, and has held this position during the six year time period.

14.    Upon information and belief, JOZEF HALADA was called "Oz" and is the Chief Information Officer of the Corporate Defendant, and has held this position during the six year time period.

15.    Upon information and belief, during the six year time period, each Individual Defendant had authority over the Corporate Defendant's management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' courier employees and other employees and each's decisions directly affected the nature and condition of the employees' employment.

16.     Upon information and belief, during the six year time period, each Individual Defendant (1) had the power to hire and fire the courier employees of the Corporate Defendant, (2) supervised and controlled the courier employees' schedules and conditions of employment, (3) determined the rate and method of payment of the courier employees, and (4) maintained employment records related to the courier employees.

17.     Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

## COLLECTIVE ACTION ALLEGATIONS

18.     Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute his FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants at any time since February 3, 2010 to the entry of judgment in this case (the "Collective Action Period") (period tolled for failure to post notice indicating employees are entitled to minimum wages and overtime and for concealing violations and employees rights under FLSA), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

19.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

20.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

21.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

22.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

        a.   whether the Defendants employed the Collective Action members within the meaning of the FLSA;

b.  whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;

c.  what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.  whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

e.  whether Defendants failed to pay the Collective Action Members, minimum wages for hours worked and/or overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.  whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

g.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.  whether Defendants should be enjoined from such violations of the FLSA in the future.

23.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

**<u>CLASS ALLEGATIONS</u>**

24.    Plaintiff sues on his own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

25.    Plaintiff brings his New York Labor Law claim on behalf of all persons who were employed by Defendant at any time since February 3, 2010 to the entry of judgment in this case (the "Class Period"), and who were non-exempt employees within the meaning of the New York Labor Law and have not been paid minimum wages and/or hourly wages for all hours worked by them, spread of hours pay for hours worked a spread of ten or more hours in a day, as well as overtime wages in violation of the New York Labor Law and/or have not received the notices required by the New York Wage Prevention Act (the "Class").

26.    The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there at least 40 members of the Class during the Class Period.

27.    The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

28.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

29.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

30.    Plaintiff has the same interests in this matter as all other members of the Class and Plaintiff's claims are typical of the Class.

31.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    i.   whether the Defendants employed the members of the Class within the meaning of the New York Labor Law;

    j.   whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

    k.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

    l.   whether Defendants failed and/or refused to pay the members of the Class, minimum wages and/or hourly wages for all hours worked by them, an extra hour of pay for each day on which members of the Class worked a spread of ten or more hours, as well as premium pay for hours worked in excess of forty hours per workweek within the meaning of the New York Labor Law;

    m.  whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, interest, costs and disbursements and attorneys' fees;

    n.  whether the Defendants failed to provide the notices and wage statements as required by the New York Wage Theft Prevention Act; and

    **o.**  whether the Defendants should be enjoined from such violations of the New York Labor Law in the future.

## **STATEMENT OF FACTS**

32.     Plaintiff  LIBRADO VASCONCELOS ("Librado") was employed by Defendant as a courier from about May 15, 2016 to November 7, 2016 (the "time period").

33.     Defendant operated and operates a courier business located at 267 West 17th Street, 3rd floor, New York, NY 10011-5389 (the "Office").

34.     During the time period, Defendant employed at any given time at least 80 courier employees and ran a business performing hand deliveries for its clients.

35.     During the time period, Librado worked with at least 80 similar couriers based in the New York Office as turnover was reasonably high.

36.     During the time period, Librado worked for Defendant as a courier and delivered packages in New York City.

37.     During the time period, Librado generally worked 5 days a week, Monday through Friday.

38.     When Librado was hired, Librado was told by the General Manager that he would be paid the higher of minimum wage or his commissions and was told that his commissions would be the higher of (b) $10 per delivery or (b) 50% of the amount paid by the client for the delivery.

39.     When Librado was hired, Oz, the General Manager, told Librado when he started the job that, according to the company rules, Librado was required to pick up the phone at all times during the day to accept delivery instructions and promptly make deliveries.  Oz also told Librado that Librado was to work from 11:00 a.m. to 8:00 p.m. each day and might also be asked to work more hours.   Oz and other managers told Librado that if he did not answer the phone and accept deliveries, he would be terminated.

40.    During the time period, Librado was not paid minimum wages for all his hours worked because (a) he was paid on a commission basis and often his commissions were less than minimum wage and in such case he was not paid for all his hours at minimum wage, (b) Librado was not paid for his Metrocard expense, (c) Librado was not paid for his phone expense, and (d) Librado was not paid proper commissions as Librado often was paid a commission for a delivery that was less than $10.00.

41.    During the time period, Librado also was not paid time and one half his regular rate for his hours worked over forty in a workweek.

42.    During the time period, in certain weeks, Librado worked more than 40 hours per week ("overtime") and generally was not paid time and one half his regular wage rate for his hours worked over forty in a workweek.

43.    During the time period, Librado generally started working at about 11:00 a.m. or earlier and ended work at about 8:00 p.m. or later.  Librado started the day by checking in with dispatchers at the Office either in person or by phone from the street.

44.    Librado sometimes worked before 11:00 a.m. when requested by the dispatcher.

45.    Librado and similar couriers did not sign in and out of their jobs.  The dispatcher kept the record of the couriers' hours.  The dispatcher generally did not sign Librado in and out correctly as the hours listed on his paystubs were not correct.

46.    Librado was not being given credit for his hours on call before his first delivery and after his last delivery.

47.    Librado was required by Defendants to buy his own Metrocard to perform his deliveries.

48.     The Metrocard was necessary to perform the deliveries as many of the locations were often far apart, often requiring Librado to travel from midtown to downtown and back, and sometimes to travel to Brooklyn or Queens and back.

49.     Librado was required by Defendants to use his own phone to communicate with the dispatcher to receive and confirm deliveries.

50.     Librado received his pick up and delivery instructions through calls on his cell phone.

51.     Librado communicated with the dispatcher by cell phone to get the information regarding his pick ups and deliveries.

52.     Librado remained on call after each delivery until he received new pick up and delivery instructions or instructions to go home.  Generally the instruction to go home was given orally.

53.     Librado was generally never told to go home before 8:00 p.m.

54.     During the time period, Librado worked for the dispatcher named Bob.

55.     During the time period, the individual Defendants were the operations managers of the Corporate Defendant.

56.     During the time period, Jan Grznar and Mark Macbain were each owners of the Corporate Defendant.

57.     During the time period, Librado repeatedly complained to his dispatcher, Bob, that Librado was not receiving minimum wages and was not being paid for his phone expense and Metrocard expense.  Librado also complained that he was not getting the $10.00 minimum commissions per delivery that he had been promised.  Librado also complained to Bob about not

getting reimbursed for his phone and Metrocard expense.  Bob repeatedly responded that he could not change Librado's pay and that Librado should just keep working.

58.     Finally, in retaliation for his complaints, Librado was terminated on November 7, 2016.  On November 7, 2016 Librado received a call from his dispatcher, Bob, who told him to come in and speak to the General Manager named "Oz."  Librado came in and met with Oz who told Librado that Librado was terminated because Librado had not made enough deliveries and was not making his quota.  Librado said that he had never been given any quotas and had never turned down any deliveries.  Librado said that he had repeatedly complained to Bob about not being given enough work and wanting more work, but Bob still did not give him more work. Oz did not respond to Librado's statements and merely said again that Librado was terminated.

59.     Librado was terminated because he demanded to be paid his proper commissions and also minimum wages during the weeks that he was not paid commissions equal or higher than the minimum wage for his hours worked.

60.     Librado never received his proper wages or payment for his full Metrocard expense and phone expense.

61.     During the time period, Librado was paid commissions according to a commission schedule equal to 50% of the amount charged to the client but was not paid the minimum $10.00 commission per delivery that he had been promised.

62.     During the time period, Librado was not paid minimum wages for all of his hours worked and was not paid his proper commissions and was not paid time and one half his regular rate for his hours worked over 40 hours in a week.

63.    During the time period, Librado was generally not paid (a) all the commissions he was owed, (b) at least minimum wage for his hours worked; and (c) time and one half his regular hourly rate for hours worked over forty in a workweek ("overtime").

64.    Defendant keeps a record of the date and time of Librado's pick ups and deliveries on a sheet called a manifest and also keeps this information electronically in its computer.

65.    During the time period, Librado never took a meal or other break and generally ate while working and was on call during the entire work period.

66.    During the time period, Librado and the other courier employees were required to buy their own Metrocards for the subway.

67.    The Metrocards were necessary for the couriers to perform their deliveries as the delivery locations were generally far apart.

68.    Defendant never reimbursed Librado or any of the other similar courier employees for their Metrocards.

69.    Weekly unlimited Metrocards during the time period cost approximately $31.

70.    During the time period, Librado was not paid minimum wages and overtime wages.

71.    Librado's job responsibilities did not require any independent judgment, and he did not have the power to hire or fire employees.

72.    During the time period, there were at least 40 other courier employees who did similar work as Librado and also had no power to hire or fire employees.

73.     Librado and these similar courier employees of Defendant during certain weeks worked more than 40 hours a week for Defendant, but were not paid time and one half for the hours worked over forty.

74.     During the time period, Librado and these other similar courier employees were not paid their proper commissions, were not paid minimum wages for all their hours worked, and were not reimbursed for their Metrocard expenses or phone expenses.

75.     During the time period, Librado and these other similar courier employees worked more than 40 hours a week, but were not paid time and one half for their wages over forty in a workweek and were not paid spread of hours pay for hours worked at least ten hours apart.

76.     Librado knows that others like him were not paid for their Metrocard expense because Defendants told Librado that their policy was not to pay for the Metrocard expenses of any courier employees.

77.     Throughout the time period, Defendant has likewise employed other individuals, like Librado, in positions as couriers.

78.     Throughout the time period, such individuals have not been paid minimum wages for all hours worked, have worked in excess of 40 hours per week and not been paid overtime premium wages of one and one half times their regular hourly rate, and have not been paid the proper amount of commissions that they earned.

79.     During the time period, Librado and similar courier employees were not specifically notified by Defendants of the regular pay day designated by Defendant, Defendant's name, address and principal place of business and telephone number and their specific rate of pay as required by the New York Wage Theft Prevention Act.  Librado has not been given any specific notice of this information to sign and has not signed any such notice.

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT

80.     Plaintiff repeats and re-alleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

81.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

82.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

83.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

84.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiff's written consent is attached hereto and incorporated by reference.

85.     At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation to its employees for their hours worked in excess of forty hours per workweek as well as minimum wages for all hours worked.

86.     As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action members, at a rate equal to or greater than the minimum wage rate and at a rate equal to or greater than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

87.     As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

88.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

89.     Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum wages, overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW

90.     Plaintiff repeats and re-alleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     At all relevant times, Plaintiff and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

92.     Defendants willfully violated Plaintiff's rights and the rights of the members of the Class, by failing to pay proper commissions, by failing to pay them minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, and/or failing to pay an extra hour of pay for spread of hours pay, in violation of the New York Labor Law and its regulations.

93.     The Defendants' New York Labor Law violations have caused Plaintiff and the members of the Class, irreparable harm for which there is no adequate remedy at law.

94.     Defendants willfully violated Plaintiff's rights and the rights of the members of the Class, by failing to provide them proper notices and wage statements in violation of the New York Wage Theft Prevention Act.

95.     As a result of Defendants' violation of the New York Wage Theft Prevention Act, Plaintiff and the members of the Class are entitled to damages for failure to maintain a notice signed by the employee of $50 per day up during which the violations occurred and/or continue to occur up to $5,000 and an additional $250 per paystub violation up to $5,000.

96.     Due to the Defendants' New York Labor Law violations, Plaintiff and the members of the Class are entitled to recover from Defendants their unpaid wages, unpaid commissions, unpaid minimum wages, unpaid spread of hours wages, unpaid overtime compensation, reasonable attorneys' fees, and/or costs and disbursements of the action, pursuant to New York Labor Law § 663(1).

### THIRD CLAIM FOR RELIEF
### (New York Labor Law – Breach of Contract)

97.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

98.     Plaintiff and members of the Class entered into employment contracts with Defendants, which required Defendants to pay Plaintiff and members of the Class their regular and overtime and minimum wages and commissions for their work performed.

99.     Plaintiff and members of the Class fully performed all their obligations under the employment contracts.

100.    Defendants breached the employment contracts by failing to pay to Plaintiff and the members of the Class, wages and commissions owed to them for services provided by Plaintiff and the members of the Class.

101.    Defendants' breach has caused Plaintiff and members of the Class to suffer damages.

102.    As a result of Defendants' breach of the employment contracts, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**(New York Labor Law – UNJUST ENRICHMENT)**

103.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

104.    Defendants have been unjustly enriched at the expense of the Plaintiff and the members of the Class by their illegally and improperly receiving the work performed by Plaintiff and the members of the Class and failing to pay Plaintiff and the members of the Class for wages for their work performed.

105.    Plaintiff and the members of the Class have been damaged by Defendants' intentional refusal to pay them wages for work requested from, received from, and performed by Plaintiff and the members of the Class.

**SIXTH CLAIM FOR RELIEF**
**(New York Common Law -- QUANTUM MERUIT)**

106.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

107.    Plaintiff and the members of the Class performed services for Defendant at Defendant's specific request, for which Defendant understood it would have to pay.

108.    Despite demand therefore, Plaintiff and the members of the Class have not been paid reasonable value for those services.

109.    Based on the foregoing, Plaintiff and the members of the Class are entitled to recover the reasonable value of the unpaid services provided to the Defendant in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (FLSA - Discrimination and Retaliation)

110.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

111.    Defendants terminated Plaintiff because he made a complaint alleging violations of the FLSA and the New York Labor Law against Defendants. The termination of Plaintiff was a retaliation for Plaintiff's making his complaint that he was not being paid all his proper wages.

112.    By terminating Plaintiff, Defendants violated the FLSA, 29 U.S.C. §201 et seq. Section 215 (a) (3) specifically states:

It shall be unlawful for any person—

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act [29 USCS §§ 201 et seq., generally; for full classification, consult USCS Tables volumes], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

113.    Due to Defendants' illegal termination of Plaintiff, Plaintiff seeks and is entitled to recover from Defendants his unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement to his former position, and reasonable attorneys' fees, and costs and disbursements of the action.

**EIGHTH CLAIM FOR RELIEF**
**(New York Labor Law - Discrimination and Retaliation)**

114.    Plaintiff repeats and realleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

115.    By terminating Plaintiff, Defendants violated New York Labor Law § 215.  New

York Labor Law § 215 states:

> § 215.  Penalties and civil action; employer who penalizes employees because
> of complaints of employer violations
>
> 1. No employer or his agent, or the officer or agent of any corporation, shall
> discharge, penalize, or in any other manner discriminate against any employee
> because such employee has made a complaint to his employer, or to the
> commissioner or his authorized representative, that the employer has violated
> any provision of this chapter, or because such employee has caused to be
> instituted a proceeding under or related to this chapter, or because such
> employee has testified or is about to testify in an investigation or proceeding
> under this chapter. If after investigation the commissioner finds that an
> employer has violated any provision of this section, the commissioner may, by
> an order which shall describe particularly the nature of the violation, assess the
> employer a civil penalty of not less than two hundred nor more than two
> thousand dollars. Notwithstanding the provisions of section two hundred
> thirteen of this chapter, the penalties set forth in this section shall be the
> exclusive remedies available for violations of this section.
>
> 2. An employee may bring a civil action in a court of competent jurisdiction
> against any employer or persons alleged to have violated the provisions of this
> section. The court shall have jurisdiction to restrain violations of this section,
> within two years after such violation, and to order all appropriate relief,
> including rehiring or reinstatement of the employee to his former position with
> restoration of seniority, payment of lost compensation, damages, and
> reasonable attorneys' fees. At or before the commencement of any action under
> this section, notice thereof shall be served upon the attorney general by the
> employee.

116.    Prior to the commencement of this claim, on February 3, 2017, Plaintiff served a

copy of this Complaint upon the Attorney General of New York State.

20

117.    Due to Defendants' illegal termination of Plaintiff, Plaintiff seeks and is entitled to recover from Defendants his unpaid wages, unpaid overtime compensation, damages for unreasonably delayed payment of wages, back pay, front pay, rehiring and/or reinstatement to his former position, and reasonable attorneys' fees, costs and disbursements of the action, and liquidated damages, pursuant to New York Labor Law § 663(1).

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated, Collective Action Members, and members of the Class, respectfully requests that this Court grant the following relief:

a.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

b.    An order tolling the statute of limitations;

c.    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

e.    An injunction against the Defendants and their officers, agents, successors,

employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.   An award of unpaid wages, unpaid minimum wages and unpaid overtime compensation due under the FLSA and the New York Labor Law;

g.   An award of spread of hours damages equal to an additional hour of pay for each day on which a plaintiff worked a spread of more than ten hours;

h.   An award of statutory damages under the Wage Theft Prevention Act in the amount of $150 per week plus interest;

i.    An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and the New York Labor Law;

j.   An award of lost wages, damages to compensate for emotional distress and punitive damages as a result of Plaintiff's illegal termination;

k.   An award of statutory damages under the New York Wage Theft Prevention Act;

l.   An award of prejudgment and postjudgment interest;

m.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.   Such other and further relief as this Court deems just and proper.


## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
        February 3, 2017

                              LAW OFFICE OF WILLIAM COUDERT RAND


                              By: _____
                                  William Coudert Rand (WR 7685)

                                  501 Fifth Ave., 15th Floor
                                  New York, New York 10017
                                  Telephone: (212) 286-1425
                                  Facsimile: (646) 688-3078
                                  Email: wcrand@wcrand.com
                                  *ATTORNEY FOR PLAINTIFF*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of _MARK MACLAIN_ _VEIO CORPORATION OF AMERICA_ *JOSEF HALADA* to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_11-8-2016_

_Librado Vasconcelos_                    _Librado Vasconcelos_

Signature                    Date     Print Name

8